# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SEAN PODPESKAR, *on behalf of himself and all others similarly situated*, | Civil No.  15-3914 (JRT/KMM) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS** |
| v. | |
| MAKITA U.S.A. INC., | |
| Defendant. | |

Amy Elizabeth Boyle and Melissa W. Wolchansky, **HALUNEN LAW**, 1650 IDS Center, 80 South Eighth Street, Minneapolis, MN  55402, for plaintiff.

Isaac W. Messmore and Nathan J. Marcusen, **BOWMAN & BROOKE LLP**, 150 South Fifth Street, Suite 3000, Minneapolis, MN  55402, for defendant.

Plaintiff Sean Podpeskar brings this action based on alleged design defects in batteries manufactured by Defendant Makita U.S.A. Inc. ("Makita").  Podpeskar alleges the following claims: violation of the Minnesota Unlawful Trade Practices Act ("UTPA"); violation of the Minnesota False Statements in Advertising Act ("FSAA"); breach of an express warranty and the implied warranty of merchantability and fitness; fraudulent misrepresentation, concealment, and failure to disclose; declaratory and injunctive relief; and unjust enrichment.

Makita moves to dismiss all claims.  Because Podpeskar sufficiently pleaded notice and unconscionability, the Court will deny Makita's motion with regard to

Podpeskar's express warranty claim.  The Court also finds Podpeskar pleaded his fraud claims with sufficient particularity and properly pleaded an unjust enrichment claim in the alternative, and therefore, the Court will deny Makita's motion with regard to those claims.  But, because Podpeskar's declaratory and injunctive relief claims are remedies rather than stand-alone claims, the Court will grant Makita's motion on those claims.

## BACKGROUND

Makita "design[s], manufacture[s], market[s] and s[ells ] power tools featuring lithium-ion batteries that have been sold throughout the United States."  (Am. Compl. at 4, Jan. 29, 2016, Docket No. 29.)[1]  Podpeskar bought a "Makita Cordless Drill Combo Set" from a retailer in Duluth, Minnesota, in summer 2013.  (*Id.* at 13.)  The set contained "a small impact drill and full-sized variable speed drill" as well as a "BL1815 18V rechargeable lithium ion [b]attery."  (*Id.*)  Podpeskar alleges that the "charger indicat[ed] the [b]attery was locked and therefore unusable" after "approximately two years" and "only a handful of uses."  (*Id.* at 14.)  Podpeskar asserts that "he contacted Makita in 2015," but that "Makita informed him that his [b]attery was no longer covered by the warranty and it refused to replace the defective [b]attery."  (*Id.* at 8.)  Podpeskar chose to purchase a new drill set for $270 rather than replace the battery for $120.  (*Id.* at 14.)

---

[1] The Court will cite to CM/ECF page numbers rather than paragraph numbers for the Amended Complaint because the Amended Complaint repeats paragraph numbers.  (*See* Am. Compl. at 13-14.)

Podpeskar contends that the batteries at issue are defective in design because they "rely solely upon the first cell for power." (*Id.* at 5.) Podpeskar alleges that this design causes the battery to fail prematurely, and renders it unusable, stating:

> Because power is used even when the [b]attery is not in use, the power in the first cell of the [b]attery is depleted. This essentially causes the chip to believe that the cell has shorted out. If a consumer attempts to charge the [b]attery three times in this state the charger will believe the [b]attery is not functional and will no longer charge it.

(*Id.*) Makita later introduced new batteries with "Star Protection Computer Controls which draw power from all cells of the battery," and which Podpeskar refers to as a "corrective measure." (*Id.* at 1-2.) Podpeskar cites reviews of Amazon.com as a "sampling" of the complaints Makita received, many dated between 2010 and 2012.[2] (*See id.* at 8-12.)

Podpeskar alleges that Makita "advertised and expressly warranted" that the batteries were "thoroughly inspected and tested before leaving the factory," and "free of defects." (*Id.* at 5 (citation omitted).) Podpeskar asserts that Makita "advertise[d] that

---

[2] For example, Podpeskar quotes the following review from Amazon.com in his complaint:

> These batteries have a design defect that will kill them prematurely and a 'feature' that will force you to buy another.
>
> There is internal circuit to control charge and count how many times it has charged or failed charging. This circuit is powered off a couple cells only, so if you leave without use too long those cells will zero out while the remaining are fully charged. This will cause a fail charging, and while it could be recoverable (if not too deep discharged) the scheme of a 'smart battery' (should we call it a scam?) prevents it from charging on the 'smart charger' and you are out $100 for a new one."

(Am. Compl. at 9 (from "BadApple" on January 8, 2012).)

the [b]atteries retain optimal battery life based on the built-in chip," by stating that:  the battery and charger combination "optimize[d] battery life by actively controlling current, voltage and temperature;" the built-in fan cooled the battery, "which help[ed] produce more lifetime work;" the specific battery resulted in an "even longer run time;" the battery and charger combination "maximize[d] battery life" and took "only 30 minutes to charge."  (*Id.* at 5-6 (citation omitted).)  Podpeskar also contends that on "information and belief, [Makita] and its agents would represent that the [b]atteries should last approximately 1,000 charges."  (*Id.* at 6.)  Podpeskar alleges that "Makita . . . represented, through its omissions, that the [b]atteries were free of defects and would function properly."  (*Id.* at 7.)  Podpeskar also asserts that Makita

> negligently, knowingly and intentionally concealed, and has **failed to disclose** that . . . its [b]atteries routinely fail well short of their usable life and are not receiving maximize battery life or any benefit based on the built-in chip . . . . Indeed, [Makita's] [b]atteries have deteriorated and will continue to deteriorate at a rate demonstrating their lack of durability and resiliency.

(*Id.* at 7 (emphasis added).)

Makita has since extended its express warranty on the batteries from one year to three years;[3] however, Podpeskar contends that "no reasonable customer would know he or she should make a warranty claim when a warranty claim was already denied or the product is outside of the original warranty period."  (*Id.* at 7.)

_____

[3] This extension of the warranty applies retroactively according to Makita's brief and its website.  (*See* Def.'s Mem. in Supp. of Mot. to Dismiss at 3-4, Mar. 18, 2016, Docket No. 40 (citing Innovation Press Release, *Makita Launches Upgraded 3-Year Lithium-Ion Warranty*, MakitaTools.com (Oct. 1, 2015), https://www.makitatools.com/company/press-releases/2015/makita-launches-upgraded-3-year-lithium-ion-warranty).)

Podpeskar filed his initial complaint on October 22, 2015, alleging a UTPA claim, an FSAA claim, express and implied warranty claims, and claims based on fraudulent misrepresentation, concealment, and failure to disclose.   Podpeskar also requested declaratory and injunctive relief, and pleaded a claim of unjust enrichment in the alternative.   The claims remain the same in Podpeskar's Amended Complaint.   Podpeskar brings his claims as a purported class action on behalf of "a class of all others similarly situated."   (*Id.* at 1.)  Podpeskar defines the national class as:

> All individuals and entities in the United States that purchased [b]atteries, or devices sold with [b]atteries, on or after October 2009.   Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors.   Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

(*Id.* at 15.)  In the alternative, Podpeskar defines a "Minnesota class" the same, except restricted to the state.  (*Id.* at 16.)

Makita initially moved to dismiss Podpeskar's complaint on January 8, 2016. Podpeskar responded by amending the complaint on January 29, 2016.  Makita brought the current motion to dismiss on March 18, 2016.

## ANALYSIS

## I.   STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint "state[s] a claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d

585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts a complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and therefore must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II.     WARRANTY CLAIMS

Podpeskar brings claims for both breach of express warranty and breach of the implied warranty of merchantability and fitness based on the allegedly defective battery design, which resulted in a shorter battery life than expected. Makita argues Podpeskar's warranty claims must be dismissed on various grounds that are addressed, in turn, below.

### A.     Pre-Lawsuit Notice

First, Makita argues that the Court should dismiss both the express and implied warranty claims because Podpeskar did not provide pre-lawsuit notice of a breach of warranty. Podpeskar alleges that he contacted Makita; Makita stated the warranty period

had lapsed; and, Podpeskar chose to buy a new product.  Podpeskar does not allege he told Makita that there was a breach of warranty or that he intended to sue.

Under Minnesota law, a buyer alleging breach of warranty "must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  Minn. Stat. § 336.2-607(3)(a).  The purpose of this requirement is:

> (1) to provide the seller with an opportunity to correct the defect . . . ; (2) to provide the seller with an opportunity to prepare for negotiation and litigation; and (3) to provide the seller with an opportunity to investigate the claims independently while the merchandise remains in a relatively pristine state.

*Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1188 (D. Minn. 2001) (citing *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 5 (Minn. 1992)).  Makita argues that the plain text of the statute requires that a buyer notify the seller of the breach of warranty, and not merely express a problem or complaint about the product.

Both parties discuss *Drobnak v. Andersen Corp.*, in which the Eighth Circuit discussed the notice requirement in section 336.2-607(3)(a).  561 F.3d 778, 784-86 (8th Cir. 2009).  There, two of the plaintiffs failed to provide notice of a problem or a breach.  *Id.* at 782.  But the plaintiffs argued the statute did not require notice in that circumstance because "[f]urther notice by additional Plaintiffs and [c]lass members would be futile."  *Id.* (alteration in original).  Makita relies on the portion of the opinion in which the court cited Judge Learned Hand's interpretation of a similar provision in the U.C.C., stating:

> The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning.

*Id.* at 785 (quoting *Am. Mfg. Co. v. U.S. Shipping Bd. Emergency Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)).

However, other parts of the opinion suggest that the notice requirement is not so strict. The reasoning in *Drobnak* suggests a buyer must notify the seller that there is a problem with the particular transaction or product, but the Eighth Circuit also stated that "[t]he bar for sufficiency is low," *id.* at 784; that "[n]otice is sufficient so long as it 'let[s] the seller know that the transaction is still troublesome and must be watched,'" *id.* (second alteration in original) (quoting Minn. Stat. § 336.2-607, U.C.C. cmt. 4); and that the purpose of notification is to "open[] the way for normal settlement through negotiation," *id.* (quoting Minn. Stat. § 336.2-607, U.C.C. cmt. 4). The court in *Drobnak* did not distinguish between notification of a specific problem and specific notification of a breach of warranty – as Makita suggests. Indeed, the facts of the case did not require the Eighth Circuit to decide that issue, since the plaintiffs provided no notice of either type. Considering *Drobnak* and the statute's underlying purpose "to defeat commercial bad faith, not to deprive a good faith consumer of his [or her] remedy," Minn. Stat. § 336.2-607, U.C.C. cmt. 4, the Court finds that a buyer need only notify the seller that he or she is unsatisfied with the product, but need not specifically state that there was a breach of warranty to satisfy the notice requirement.

Here, Podpeskar provides few details of his notice to Makita, stating only he contacted Makita and Makita told Podpeskar his warranty was expired.  (*See* Am. Compl. at 8.)  But from those factual allegations, it follows that Podpeskar must have complained about the quality of the battery – his problem – and Makita told Podpeskar it would not solve his problem.  Indeed, the purposes of the notice requirement are sufficiently met in this case.  Makita had an opportunity to correct the defect by replacing or fixing Podpeskar's battery.  Makita knew to look at the Podpeskar transaction and could have prepared for negotiation based on Podpeskar's complaint.  Accordingly, the Court rejects Makita's argument that Podpeskar failed to satisfy the pre-lawsuit notice requirement.

### B.    Limited Warranty

Second, Makita argues the Court should dismiss the express warranty claim because the applicable limited warranty does not cover a design defect.  Makita argues that the battery was subject to a limited warranty, only covering defects from workmanship and materials.  "[D]efects in material and workmanship refer to departures from a product's intended design," and not "inadequacy of the design itself."  *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013).[4]  The applicable warranty is titled "Limited Warranty," and states in relevant part:

> Each Makita Lithium-Ion **tool is warranted to be free of defects of workmanship and materials for the period of THREE YEARS** from the date of original purchase.  The Makita Lithium-Ion **battery has a limited**

---

[4] The Eighth Circuit applied Indiana law in *Bruce Martin Construction*, 735 F.3d at 752-54, but "[t]he elements of a claim for breach of express warranty are the same under Minnesota and Indiana law."  *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 861 (D. Minn. 2012).

> **ONE YEAR warranty.** Should any trouble develop during the three-year period for the Lithium-Ion tool and during the one-year period for the Lithium-Ion battery, return the COMPLETE tool and or battery, freight prepaid, to one of Makita's Factory or Authorized Service Centers.
>
> If inspection shows the trouble is caused by defective workmanship or material, Makita will repair (or at our option, replace) without charge.

(Decl. of Isaac W. Messmore in Supp. of Mot. to Dismiss, Ex. 1 ("Warranty"), Jan. 8, 2016, Docket No. 14 (emphasis added).)[5]   Podpeskar argues that because the "workmanship and materials" language appears in the tool warranty sentence, the limitation does not apply to the battery warranty, discussed in the next sentence.

The difference in language between the sentence about the tool warranty and the one about the battery warranty could have been purposeful, as Podpeskar contends, meaning that Makita intended to limit the tool warranty to workmanship and material defects; however, the Court must read the entire warranty together.  *See Brookfield Trade Ctr., Inc. v. Cty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) ("We read contract terms in the context of the entire contract and will not construe the terms so as to lead to a harsh and absurd result.")   Read in the context, the workmanship and materials limitation applies to the entire warranty.  For example, the warranty directs – presumably for both the tool and the battery – that the buyer mail the product to a Makita factory or service center, where "[i]f inspection shows the trouble is caused by defective workmanship or material, Makita will repair . . . without charge."   (Warranty.)   Moreover, if only the

---

[5] "In addition to the pleadings, the Court may properly consider materials that are necessarily embraced by the pleadings." *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 851 (D. Minn. 2015).  Here, the Court will consider the warranty because Podpeskar quoted from it multiple times in the complaint.  (*See* Am. Compl. at 5, 7, 26.)

single sentence applies to the battery warranty, the buyer has no information on how to access relief under the warranty or what damage is covered.  While not perfectly drafted, any reasonable reading of the entire warranty requires the "workmanship and materials" limitation to apply to both the tool and the battery warranties.

Podpeskar also argues that Makita's advertising statements are express warranties, which conflict with and should override the workmanship and material limitation. Podpeskar points to several of Makita's marketing statements, including: "15-minute rapid optimum charger communicates with the battery's built-in chip throughout the charging process to optimize battery life by actively controlling current, voltage and temperature."  (Am. Compl. at 5-6.)  And that the tool "[a]ccepts Makita 18-Volt LXT lithium-ion battery for even longer run time."  (*Id.*)  Podpeskar argues that these statements warrant that the chip will have increased battery life, and the workmanship and material limitation cannot be read to prohibit breaches of that warranty involving design defects.

Under Minnesota law, a seller can create an express warranty through "[a]ny affirmation of fact or promise" or "[a]ny description of the goods," which form "the basis of the bargain," and therefore, "creates an express warranty that the goods shall conform" to the promise or description.  Minn. Stat. § 336.2-313(1)(a)-(b).  While a seller need not "use formal words such as 'warrant' or 'guarantee,' . . . an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  Minn. Stat. § 336.2-313(2).

However, "[t]o be actionable, warranties must be more than 'mere puffery.'" *Windsor Craft Sales, LLC v. VICEM Yat Sanayi ve Ticaret AS*, No. 10-297, 2012 WL 639432, at *5 (D. Minn. Feb. 28, 2012). Also, courts typically do not construe general statements about the quality of a product or service as express warranties. *See, e.g.*, *Bernstein v. Extendicare Health Servs.*, 607 F. Supp. 2d 1027, 1032 (D. Minn. 2009) ("Statements that a nursing home will comply with or exceed 'applicable laws,' or that it has established 'rigorous standards,' are similar to statements that services provided will be 'high quality.' These statements are puffery."); *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1498 (D. Minn. 1996) (finding in a false advertising action that the statement a business used – "the most advanced equipment available" – was "mere puffery" and a "generalized exaggeration or overstatement of superiority . . . expressed in broad, vague and commendatory terms"). The statements here – "to optimize battery life" and "even longer run time" – are nonspecific and more akin to statements of "high quality" than a specific promise, affirmation, or description of the goods. Thus, the Court finds that they do not conflict with or render inoperable the workmanship and materials limitation.

Podpeskar next argues that even if the workmanship and materials limitation applies to the battery, the Court should find it unconscionable. Workmanship and materials warranties are not categorically unconscionable. *See In re Caterpillar, Inc., C13 and C15 Engine Prods. Liab. Litig.*, No. 14-3722, 2015 WL 4591236, at *20-22 (D.N.J. July 29, 2015) (collecting cases stating that warranties limited to defects in material and workmanship were not categorically unconscionable, and finding that the

plaintiffs had not sufficiently alleged unconscionability based on the defendant's knowledge of the defect prior to sale).   But, such a warranty may be unconscionable under the present facts because the batteries allegedly failed due to defective design Makita knew about.  *See Hagen v. McAlpine & Co.*, No. 14-1095, 2015 WL 321428, at *3-4 (D. Minn. Jan. 26, 2015) (denying a motion to dismiss based on a warranty limitation because the plaintiffs had pleaded facts – that the defendant knew that the product was manufactured with defective materials – that if true would have made the warranty limitation unconscionable).

The   Court   finds   that   Podpeskar   pleaded   sufficient   facts   regarding unconscionability, and "the Court must allow [Podpeskar] 'the opportunity to submit evidence regarding the disclaimer's commercial setting, purpose, and effect.'"  *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1144 (D. Minn. Mar. 30, 2016) (quoting *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-2359, 2013 WL 3717743, at *8 (D. Minn. July 15, 2013)).   Accordingly, the Court will deny Makita's motion with regard to Podpeskar's express warranty claims: while the materials and workmanship limitation applies to the batteries, and no additional express warranty overrides the limitation, Podpeskar sufficiently alleged unconscionability to survive a motion to dismiss.

## III.   FRAUD CLAIMS

Next, Makita argues that the Court should dismiss Podpeskar's fraud-based claims because he failed to plead them with sufficient particularity.   The heightened pleading

requirement of Fed. R. Civ. P. 9(b) applies to Podpeskar's UTPA and FSAA claims, *see Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 985-86 (D. Minn. 2011), as well as his fraud claims, *see Toomey v. Dahl*, 63 F. Supp. 3d 982, 996-97 (D. Minn. 2014) (applying the heightened standard to Minnesota fraudulent misrepresentation claim); *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1022 (D. Minn. 1997) (applying heightened standard to fraudulent concealment claim).

Rule 9(b) requires that the circumstances surrounding a party's allegations of fraud or mistake must be pleaded with particularity.  Courts have construed this requirement to mean that "the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby."  *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013) (quoting *Drobnak*, 561 F.3d at 783).  Or, in other words, a plaintiff "must typically identify the who, what, where, when, and how of the alleged fraud."  *Id.* (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)).

### A.     Particular Statements

Podpeskar contends that he satisfied the particularity requirement.  In response to Makita's motion, Podpeskar points to several allegations.  First, Podpeskar alleged that Makita "advertised and expressly warranted the batteries to not only be 'thoroughly inspected and tested before leaving the factory,' but also 'free of defects.'" (Am. Compl. at 5 (citing the warranty on Makita's website).)  Second, Podpeskar's complaint

contained several statements regarding the optimized battery life from the Home Depot and CPO Outlets websites, including:  the battery and charger combination "optimize[d] battery life by actively controlling current, voltage, and temperature"; the "built-in fan . . . cool[ed] the battery," which would produce "more lifetime work"; the specific battery resulted in an "even longer run time"; and the battery and charger combination "maximize[d] battery life" and took "only 30 minutes to charge."  (*Id.* at 5-6.)  Finally, Podpeskar alleged that "[u]pon information and belief, [Makita] and its agents would represent that the [b]atteries should last approximately 1,000 charges."  (*Id.* at 6.)

Because many of the statements Podpeskar relies upon suffer from certain infirmities,[6] Podpeskar's claims rest on the sufficiency of the second group of statements, which refer to an "optimize[d] battery life," "more lifetime work," "even longer run time," and "maximize[d] battery life."[7]  (*Id.* at 5-6.)  "Rule 9(b) does not require that the exact particulars of every . . . instance of 'false' advertising be specified in the Complaint."  *Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1084

---

[6] Podpeskar's claims regarding the warranty language would not, by themselves, satisfy the Rule 9(b) standard because the statements specifically relate to a warranty for defects in workmanship.  (*See* Warranty; *see also* Am. Compl. at 5.)  Further, Podpeskar's statements pleaded on "information and belief" could not independently support a finding that Podpeskar met Rule 9(b)'s particularity requirement.  *See Drobnak*, 561 F.3d at 783.  Thus, while these facts can support an underlying inference that fraud occurred, they do not, by themselves, show Podpeskar satisfied Rule 9(b)'s particularity requirement.

[7] Makita notes that the statements Podpeskar relied upon are from retailer websites and not directly from Makita.  But, Makita failed to cite any case law obligating the Court to credit the statements to the retailers.  And, in fact, one may assume that statements describing the product specifications on a retailer's website came from the manufacturer – not the retailer. Thus, at least at this stage, and without any contrary case law, the Court will attribute those statements to Makita.

(D. Minn. 2007).   In *Axcan*, the court found a complaint satisfied Rule 9(b) because the plaintiff "pleaded the 'who [the Defendants], what [false advertising], where [in ads targeted to drug databases, wholesalers, and pharmacies], when [since the late 1990's], and how [falsely claiming their drugs are generic equivalents or substitutes]' of its claims."   *Id.* (alteration in original).   Podpeskar did the same here, pleading the who (Makita), what (misrepresentations concerning the battery life of the drills), where (on the product packaging and in marketing materials), when (throughout the Class Period), and how (by falsely advertising the useful life and quality of the Batteries) of his fraud claims.   Podpeskar's complaint "clearly apprises [Makita] of the acts relied upon by [Podpeskar] in support of [his] claims."   *Id.*   Thus, although the Complaint could have been clearer, the Court finds Podpeskar pleaded his fraud claims with sufficient particularity to survive a motion to dismiss.

### B.   Duty to Disclose

Makita also argues that Podpeskar did not sufficiently allege that Makita had a duty to disclose material facts, and that therefore, Podpeskar's claims based on fraudulent omissions or nondisclosures fail.   "As a general rule, one party to a transaction has no duty to disclose material facts to the other."   *Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1064 (D. Minn. 2001) (citing *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989)).   This rule has three exceptions: "(1) where a party has made a representation and must disclose more information to prevent the representation from being misleading; (2) where a party has special knowledge of material facts to which the

other party does not have access; and (3) where a party stands in a confidential or fiduciary relation to the other party." *Exeter Bancorp., Inc. v. Kemper Sec. Grp.*, 58 F.3d 1306, 1314 (8th Cir. 1995). These are "special circumstances," which "may trigger a duty to disclose material facts." *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014).

Podpeskar aims for the second exception, and alleges that Makita "had special knowledge of material facts to which [Podpeskar] and the [c]lass members did not have access, and, therefore, had a duty to disclose these facts to the other party so as to prevent its statements from being misleading." (Am. Compl. at 23.) In *Graphic Communications*, the Minnesota Supreme Court held a plaintiff is required to allege "actual knowledge of fraudulent conduct." 850 N.W.2d at 698. Here, Podpeskar satisfied that pleading requirement by alleging Makita had actual knowledge of its fraudulent conduct. Specifically, Podpeskar alleged that Makita knew of the batteries' defects and that a buyer could not reasonably learn of the defect until after purchase. (*See* Am. Compl. at 5, 7, 15.) Accepting those allegations as true, Makita was in a superior position to know about the defect in its batteries. *See Johnson*, 175 F. Supp. 3d at 1146. Thus, the Court will deny Makita's motion with regard to Podpeskar's fraud claims based on omissions and nondisclosures.

## C.   Reliance and Causation

Next, Makita argues that Podpeskar's common law fraud claims fail because Podpeskar did not allege facts showing reliance on a misrepresentation or that such

reliance caused his damages.   Both parties agree that "[d]etrimental reliance is an essential element of a common law fraud claim."   *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 491 (8th Cir. 2004).   Makita contends that Podpeskar made only conclusory allegations of reliance and causation.   *See, e.g.*, *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 673 (8th Cir. 2012) ("The homeowners provided only conclusory allegations that they relied on the lender's representations and were damaged 'as a direct and proximate result' of that reliance.")

While the Complaint is not a model of clarity, the Court finds that Podpeskar sufficiently alleged reliance to move forward.   Podpeskar alleged:  he "reasonably relied upon the statements made by Makita on the [b]atteries' packaging," (Am. Compl. at 7); "Makita also represented, through its omissions, that the [b]atteries were free of defects and would function properly," (*id.*); and that "he would not have purchased the [b]atteries or he would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk, or simply avoided the risk altogether by purchasing a different product" if he had "known the [b]atteries were defective and would fail prematurely," (*id.* at 22).   Accepting these allegations as true, Podpeskar alleged that he relied on statements and omissions suggesting the product was not defective at the time of purchase and that he was damaged by this reliance.

### D.      Public Benefit

Makita argues that Podpeskar's UTPA and FSAA claims also fail because he failed to allege a public benefit.   A plaintiff pursuing relief under the Private Attorney

General Statute must "demonstrate that their cause of action benefits the public." *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1076 (D. Minn. 2010) (quoting *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000)).  In determining whether an action benefits the public, courts consider "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged representation; the kind of relief sought; and whether the alleged misrepresentations are ongoing." *Khoday v. Symantec*, 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012).  When a "plaintiff[ ] seek[s] only damages, courts typically find no public benefit." *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 937 (D. Minn. 2014) (quoting *Select Comfort v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 986 (D. Minn. 2011)).

Here, several factors weigh in favor of finding Podpeskar sufficiently pleaded a public benefit:  Podpeskar attempts to bring a class action and injunction and the product was likely widely disseminated; thus, Podpeskar seeks to benefit more than just himself.  While it is less clear if the harm is ongoing, *cf. Johnson*, 175 F. Supp. 3d at 1142-43 (relying on the fact that the misrepresentations were ongoing), the Court finds sufficient allegations to support a public benefit and will deny Makita's motion with regard to Podpeskar's UTPA and FSAA claims.

## IV.   EQUITABLE CLAIMS

### A.   Unjust Enrichment

Makita contends that Podpeskar's unjust enrichment claim should be dismissed because he has an equitable remedy at law; whereas Podpeskar responds that he is

properly pleading the unjust enrichment claim in the alternative. "So long as an adequate legal remedy exists, equitable remedies like unjust enrichment are not available." *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014). However, it is impossible to know at this stage if Podpeskar has an adequate remedy at law, and thus, his unjust enrichment claim properly pleaded in the alternative under Fed. R. Civ. P. 8(d)(2). *See, e.g.*, *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1075 (D. Minn. 2013); *In re Levaquin*, 752 F. Supp. 2d at 1081. Accordingly, the Court will deny Makita's motion with regard to Podpeskar's unjust enrichment claim.[8]

## B.    Declaratory and Injunctive Relief

Makita also challenges Podpeskar's declaratory and injunctive relief claim, arguing that it is actually a remedy and not a stand-alone claim, and therefore it should be dismissed. Podpeskar contends that it is premature to dismiss his declaratory relief claim as duplicative or arising under his substantive claims because declaratory relief may be necessary if an injunctive relief class is certified under Fed. R. Civ. P. 23(b)(2). *Gooch v. Life Inv'rs Co.*, 672 F.3d 402, 427-29 (6th Cir. 2012) (discussing certification under Rule

---

[8] Makita also argues that the unjust enrichment claim should be dismissed because Podpeskar failed to plead the claim with particularity under Rule 9(b). The parties agree that Rule 9(b) applies to an unjust enrichment claim based on fraud. *See Khoday*, 858 F. Supp. 2d at 1010-11 n.5. Because Podpeskar's unjust enrichment claim relies on the same misrepresentations that form the basis of his fraud claims – they rise and fall together. *See OrthoAccel Techs., Inc. v. Devicix, LLC*, No. 15-1503, 2015 WL 4563134, at *5 (D. Minn. July 29, 2015) (finding that "Plaintiff has alleged its fraud claims with sufficient particularity to overcome Defendant's motion to dismiss; therefore, the same is true for its unjust enrichment claim"). Thus, because the Court finds that Podpeskar pleaded his fraud claims with sufficient particularity, as discussed above, Makita's argument fails here as well.

23(b)(2) for class declaratory relief); *Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010) (same).

Podpeskar's claim asks for a declaration, stating that Makita's "batteries have defects," that Makita "knew of the defects," and requiring Makita to "re-audit and reassess all prior warranty claims" and "establish an inspection program" for class members' claims. (Am. Compl. at 30.) The requested declaratory relief is very similar to that discussed in *Gooch*, 672 F.3d at 427-29 and *Pella Corp.*, 606 F.3d at 395.

Makita, rightly argues, however, that declaratory and injunctive relief are remedies rather than claims, and should be dismissed. *See Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (dismissing declaratory and injunctive relief count because they were "merely remedies, not separate causes of action"). While there is the possibility of certification under Rule 23(b)(2) for class-wide declaratory relief, declaratory relief does not require a separate claim, rather it is a remedy for a wide-variety of claims. Podpeskar provides no case law suggesting that a separate claim for declaratory relief is required in order to certify under Rule 23(b)(2). Thus, the Court will grant Makita's motion with regard to Podpeskar's stand-alone declaratory and injunctive relief claim, but Podpeskar remains free to seek declaratory and injunctive relief as a remedy.

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Makita's Motion to Dismiss [Docket No. 38] is **GRANTED**

**in part** and **DENIED in part** as follows:

1.     The motion is **GRANTED** with regard to Podpeskar's declaratory and

injunctive relief claim.  The declaratory and injunctive relief claim is **DISMISSED with**

**prejudice**.

2.     The motion is **DENIED** in all other respects.

DATED:  March 28, 2017                         _____s/_John_R._Tunheim_____
at Minneapolis, Minnesota.                             JOHN R. TUNHEIM
                                                                         Chief Judge
                                                          United States District Court